IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID STEWART, etc., et al., | ) |
| Plaintiffs, | ) |
| v. | ) CIVIL ACTION 08-0200-WS-B |
| JOE EDWARD JOHNSON, et al., | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion to remand. (Doc. 40). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 40, 45-52, 54), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to remand is due to be granted.

## BACKGROUND

On July 11, 2007, according to the complaint, Joe Edward Johnson ran a red light at the intersection of two Baldwin County highways and struck a vehicle, driven by Tracey Lee Stewart, on the front passenger door. Just inside that door sat Celena Sprinkle, who suffered a severe head injury as a result. Celena's daughter Faith Stewart, who was in the back seat, was rendered a quadriplegic. Celena's sister Tracey was also hurt. (Doc. 5, ¶¶ 11-13).

In August 2007, the three injured parties brought suit in Mobile County Circuit Court against Johnson and two artificial entities. The entity defendants (Johnson had not been served with process) removed the action in October 2007 on the basis of diversity of citizenship. *Sprinkle v. Johnson*, Civil Action No. 07-0713-WS-B. The plaintiffs moved to remand on the grounds that Johnson, like Celena and Faith, was a citizen of Alabama.

(*Id.*, Doc. 5).  This Court ruled that the removing defendants had failed to carry their burden of showing that Johnson was not a citizen of Alabama, granted the plaintiffs' motion, and remanded the case to state court.  (*Id.*, Doc. 7).

In January 2008, the plaintiffs[1] filed an amended complaint which, inter alia, added four defendants, including Newleaf Disaster Management ("Newleaf") and Category 5 Management Group, LLC ("Category 5").  (Doc. 22 Part 7).  According to the lengthy state court docket sheet, each of these defendants was served in January, and some of them responded to the complaint, but none of them removed the action.  Instead, Johnson removed on April 18 after being served on March 19,[2] on the same basis as the first, failed removal — that he is not a citizen of Alabama and that complete diversity therefore exists.[3]

Given the allegation of quadriplegia, there is no question but that the amount in controversy, exclusive of interest and costs, exceeds $75,000, and the parties do not argue otherwise.[4]  They also agree that David, Patricia, Celena and Faith are citizens of Alabama and that Newleaf and Category 5 are citizens of Florida.  (Doc. 1 at 3; Doc. 22 Part 7, ¶¶ 32-33).  The issues are whether Tracey is also a citizen of Florida and whether Johnson is also a citizen of Alabama.  If either of these propositions is correct, complete diversity is lacking and remand is required.  Because the Court finds the first proposition correct, it pretermits consideration of the second.

---

[1]Shortly before the instant removal, David and Patricia Stewart, as the guardian and conservator of their daughter Celena and their granddaughter Faith, were substituted as party plaintiff.

[2]All other defendants consented to removal.  (Doc. 1, Exhibit 7).

[3]Because the motion to remand asserts no defect in the removal procedure, the Court need not evaluate the propriety vel non of removal under the unusual circumstances here presented.

[4]Whether or not Tracey's damages exceed the jurisdictional amount, the Court would have supplemental jurisdiction over her claim.  28 U.S.C. § 1367(a).

## DISCUSSION

The defendants, as the parties seeking federal forum, "bear the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction," including the parties' citizenship. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). "For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom ...." *McCormick*, 293 F.3d at 1257 (internal quotes omitted).

"A party can have only one domicile at a time." *Slate v. Shell Oil Co.*, 444 F. Supp. 2d 1210, 1215 (S.D. Ala. 2006). A person is presumed to be "a domiciliary of the State of his birth, unless a new domicile is acquired." *Gregg v. Louisiana Power & Light Co.*, 626 F.2d 1315, 1317 (5th Cir. 1980). "[A] change of domicile requires a concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely ...." *McCormick*, 293 F.3d at 1258 (internal quotes omitted).

While showing physical presence in a state ordinarily presents few complications, measuring intent to remain there indefinitely is more problematic. Subjective statements of intent are relevant, but not dispositive, *Slate*, 444 F. Supp. 2d at 1215, especially when made with awareness of the significance of such expressions to the jurisdictional analysis. A welter of objective indicia may be considered, including, without limitation, "the state(s) where civil and political rights are exercised, where taxes are paid, where real and personal property are located, where driver's and other licenses are obtained, where mail is received, where telephone numbers are maintained and listed, where bank accounts are maintained, where places of business or employment are located, and where memberships in local professional, civil, religious or social organizations are established." *Id*.

As discussed below, Tracey has lived, in order, in Alabama, Florida, Texas,

Louisiana, and South Carolina.[5]  The defendants argue that Tracey never established a domicile in Florida and that, even if she did, she later changed her domicile to South Carolina.[6]  The Court considers these contentions in turn.

### I.  Did Tracey Establish Her Domicile in Florida?

The Court makes the following findings of fact concerning whether Tracey ever established a Florida domicile.

Tracey was born in August 1980.  (Doc. 40, Stewart Affidavit, Exhibit C1).  She lived in Alabama until moving to Pensacola in the year 2000.  (*Id*., Stewart Affidavit, ¶ 4).  She lived with friends in an apartment on Underwood Avenue and then a townhouse on Pinnacle Drive.  (*Id*.).  During 2000 and 2001, she worked in the Pensacola area cleaning homes and apartments.  (*Id*.).  In June 2001, Tracey enlisted in the United States Air Force, in Pensacola.  (*Id*., Stewart Affidavit, ¶ 6).  In August 2001, she obtained a Florida driver's license, which replaced the Alabama license she had obtained at age 16.  (*Id*., ¶ 4 & Exhibit C1).  The same month, she departed Florida to begin serving her military commitment.  (Doc. 51, Stewart Affidavit, ¶ 7).

Tracey went through basic training and tech school in Texas.  (Doc. 40, Stewart Affidavit, ¶ 7).  She was then assigned by the Air Force to an installation in Louisiana, where she stayed until 2005.  (*Id*.).  In 2005, Tracey re-enlisted, identifying her old Pensacola address as her "home of record."  (*Id*., Exhibit G1).  She completed a base

---

[5]There is uncontroverted evidence that, in late 2007, Tracey received a humanitarian transfer to Hurlburt Field in Fort Walton Beach, that she is living temporarily in Alabama while caring for her injured sister and niece, and that she will move to Florida later this year to complete her military career there.  (Doc. 40, Stewart Affidavit, ¶¶ 7-9).  The defendants argue that this evidence is irrelevant because citizenship is to be measured as of August 2007, when suit was filed.  (Doc. 45 at 6-7).  As reflected by the discussion in text, ignoring this evidence does not produce a more favorable result for the defendants.

[6]The defendants do not argue that Texas or Louisiana was ever her domicile.

preference form, listing five Florida bases, but was assigned instead to a South Carolina facility. (*Id*., Stewart Affidavit, ¶ 7).

For every year beginning 2001, Tracey's W-2 forms have identified Florida as the state to which income taxes are to be paid. (Doc. 40, Stewart Affidavit, Exhibit B1).

After leaving Florida in 2001, Tracey twice lost her driver's license; both times, she traveled to Florida to obtain a replacement. (Doc. 40, Stewart Affidavit, ¶ 4). Since 2001, Tracey has never obtained a driver's license in Texas, Louisiana, South Carolina, or any other state. (*Id*.).

In December 2004, while stationed in Louisiana, Tracey submitted an application to vote in Florida. (Doc. 40, Stewart Affidavit, Exhibit D1). She was not registered to vote due to an inaccuracy concerning her Florida address. (*Id*., Stewart Affidavit, ¶ 5; Doc. 45, Exhibit 7) She is not a registered voter in Alabama, Texas, Louisiana, South Carolina, or any other state. (Doc. 40, Stewart Affidavit, ¶ 5).

In July 2006, while stationed in South Carolina, Tracey purchased in Florida the vehicle involved in the subject accident. (Doc. 40, Stewart Affidavit, ¶ 12 & Exhibit L1).

The defendants question the accuracy and/or significance of many of these facts, beginning with whether Tracey ever lived in Florida. With respect to the Underwood Avenue apartment, they provide an affidavit from the current apartment manager producing a lease from the relevant time period that shows neither Tracey nor her identified roommates as the lessee. (Docs. 52, 54). The plaintiffs, however, have affidavits from four non-parties swearing that Tracey lived with Justin Christie in a Pensacola apartment during this time, (Doc. 51, Exhibits B-D) — including from Justin's grandparents — while the apartment manager has no personal knowledge. Even if there is an error as to the correct apartment number, it is plain that Tracey in fact lived in Pensacola during this period.

Similarly, the defendants note that Tracey has consistently identified the Pinnacle Drive address as 1730-B, yet no such address exists. (Doc. 45 at 4-5, 10-11). Both

Tracey and Justin, however, have produced affidavits correcting the address as 1370-B, which the defendants concede is an existing address, and which is in fact a townhouse. (Doc. 51, Stewart Affidavit, ¶ 3; *id*., Exhibit C).

The defendants admit the plaintiff obtained a Florida driver's license, but they argue the Court should disregard it because it carries the transposed, 1730-B street number. (Doc. 45 at 4-5). They offer no evidence to support their assertion that Tracey possessed felonious intent in using the incorrect number, nor do they offer any authority or even explanation how a bad intent could negate the fact or significance of a Florida driver's license to the domicile inquiry.

The defendants concede the plaintiff has consistently identified Florida on her W-2 forms, but they argue this fact carries no significance because Florida imposes no income tax. (Doc. 45 at 6). That is certainly advantageous for Tracey, but the defendants fail to explain how it drains the relevance from her affirmative act of identifying Florida as her home state for taxation purposes. *See McCormick*, 293 F.3d at 1258 (citing the plaintiff's payment of income taxes only in Florida as a circumstance suggesting a Florida domicile).

Likewise, the defendants concede that Tracey sought to register as a Florida voter, but they note that she did not succeed; that she failed because she used the 1730-B address, which the registrar discovered did not exist; that she did not make further attempts to register; and that she never voted in Florida. (Doc. 45 at 5). As discussed above, the use of the wrong address is not significant. Her failure to complete registration or actually vote may matter more, but the fact remains that Florida is the only state in which she even attempted to register.

It thus appears that Tracey did about as much to establish domicile in Florida as one might reasonably expect a 20-year-old to do: she resided there, she worked there, she obtained a driver's license there, and she claimed tax responsibility there. Any ambiguity about this conduct is resolved by her continuing attachment to Florida after enlisting in

the military and leaving the state: returning there to obtain replacement driver's licenses; submitting an application to vote there; returning there to purchase a vehicle; continuing to claim Florida as her state for taxation purposes; and making it her strong preference for military assignment.  Notably, she engaged in none of this post-enlistment conduct with respect to any state other than Florida.  *See McCormick*, 293 F.3d at 1258 (holding a Florida driver's license, registering to vote in Florida, and paying only Florida income taxes all supported trial court's finding of a Florida domicile).[7]

This substantial showing of objective indicia of domicile is supported by the evidence of Tracey's subjective intent.  Her own testimony that, while residing in Florida in 2000-2001, she formed the intention to live there permanently is supported by affidavits from three non-parties who heard her contemporaneous statements to that effect.  (Doc. 40, Stewart Affidavit, ¶ 4; Doc. 51, Exhibits C-D).

The Court finds, based on a preponderance of the evidence, that Tracey established domicile in Florida.

## II.  Did Tracey Change Her Domicile to South Carolina?

The defendants marshall the following evidence that Tracey exchanged her Florida domicile for a South Carolina domicile after being transferred there in 2005: (1) she bought a house off-base; (2) she continued to own the house despite moving to Alabama after the accident; (3) she paid property taxes on the house, even after leaving South Carolina; (4) she paid utilities on the house; (5) she received mail at the house until she moved to Alabama; (6) in obtaining a mortgage, she identified the house as her principal residence; (7) in obtaining a break on her property taxes, she declared the house to be her domicile; (8) when purchasing her vehicle in Florida in 2006, she gave her South

---

[7]The defendants complain that, unlike the plaintiff in *McCormick*, Tracey never acquired real property in Florida.  (Doc. 45 at 6).  They have not explained why the failure of a 20-year-old to purchase a house should be fatal to showing domicile.

Carolina address; (9) her vehicle was registered in South Carolina; (10) the Florida Department of Highway Safety and Motor Vehicles reflects a South Carolina address for her; (11) she paid a speeding ticket in South Carolina; and (12) all four iterations of the complaint identify her as residing in South Carolina at all times relevant to the complaint. (Doc. 45 at 2-3, 7-10, 12). Impressive in numbers, the defendants' evidence is less so in substance, certainly too insubstantial to carry their burden.

Tracey, as stated in her complaint, was residing in South Carolina at the time of the accident. The defendants insist that this fact provides prima facie evidence of a South Carolina domicile, citing *Slate*, 444 F. Supp. 2d at 1215 n.9. (Doc. 45 at 7). *Slate*, however, involved civilians, while "[a] serviceman is presumed not to acquire a new domicile when he is stationed in a place pursuant to orders." 13B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3617 (2nd ed. 1984). The defendants, who acknowledge the validity of this presumption, (Doc. 45 at 8), have not explained how, in the face of it, the mere fact of residing in South Carolina can provide prima facie evidence of a South Carolina domicile. At any rate, even for non-military personnel, "mere residence in the State is not sufficient." *Mas*, 489 F.2d at 1399.

The defendants next argue that Tracey's purchase of a house in South Carolina both rebuts the foregoing presumption and carries their burden of proof. (Doc. 45 at 8-9). For this proposition, they rely exclusively on *Deese v. Hundley*, 232 F. Supp. 848 (D.S.C. 1964). *Deese*, however, stated only that the plaintiff, when he voluntarily moved off-base "and then and there determined he wished to be a domiciliary" of the state, became one. *Id*. at 850. The intent to become domiciled in the state was not proved by the mere act of moving off-base, but by the plaintiff's sworn testimony of his intention to be a permanent resident of the state. *Id*. at 849-50. "The establishment of a home 'off-base' by a serviceman, without more, ... is not sufficient to evidence an intention to change domicile," but "is merely a circumstance to be weighed with the other circumstances in the case." *Bowman v. DuBose*, 267 F. Supp. 312, 314 (D.S.C. 1967).

Declaring in her mortgage that the house represented her principal residence reflects nothing but the unremarkable fact that Tracey owned only one home. True, she still owned the house even after leaving South Carolina, but she listed it for sale at the same time she left the state, (Doc. 51, Stewart Affidavit, ¶ 2), and it can hardly affect the domicile analysis that the house did not sell until May or June 2008. (*Id*., ¶ 3). Nor can paying property taxes and utilities on the house advance the defendants' argument, since these are necessary expenses of owning any property. Receiving mail may have some significance, *Slate*, 444 F. Supp. 2d at 1215, but it cannot be much when the alternative is to travel hundreds of miles to receive correspondence.

The defendants' prize argument is that, in order to receive a reduced property tax rate, Tracey signed a legal residence application under penalty of perjury. According to the defendants, she thereby swore that she was domiciled in South Carolina and that she does not claim to be a legal resident of any other state. (Doc. 45 at 9). The actual document signed by Tracey, however, does not contain such language; instead, it confirms only that her South Carolina residence is "the domicile of (occupied by) the owner-applicant," and it elsewhere equates domicile with "residence." (*Id*., Exhibit 2). The document thus fails to define "domicile" helpfully to the defendants, and it says nothing about the existence vel non of domicile in another state.[8]

The defendants' remaining arguments concern Tracey's vehicle. Of course she gave the South Carolina address as her address when purchasing a vehicle in 2006, because that is where she resided. The important point is that she traveled to Florida to purchase a vehicle readily available in South Carolina. Similarly, the records of the Florida agency regulating motor vehicles unsurprisingly reflects a South Carolina address

---

[8]Nor did Tracey violate South Carolina law by claiming the lower tax rate, since "[a] member of the armed forces of the United States on active duty who is a legal resident of and domiciled in another state is nevertheless deemed a legal resident and domiciled in this State for purposes of this item if the member's permanent duty station is in this State." S.C. Stat. § 12-43-220(c)(v).

for Tracey, since she lived there, but the significance of her driver's license is that, despite living elsewhere, she twice went to Florida to obtain a replacement and did not seek a South Carolina license. Her vehicle was registered in South Carolina, but only because the state required it. (Doc. 40, Stewart Affidavit, ¶ 12). That she got and paid a speeding ticket in South Carolina can have no more significance than receiving a haircut there.

Proof that a service person formed the intention to make the state of her assignment her new domicile "requires clear and unequivocal evidence." Federal Practice and Procedure § 3617; *accord Callahan v. Countrywide Home Loans, Inc.*, 2006 WL 1776747 at *5 (N.D. Fla. 2006); *In re: Ski Train Fire*, 257 F. Supp. 2d 717, 726 (S.D.N.Y. 2003); *Rosado-Marrero v. Hospital San Pablo, Inc.*, 927 F. Supp. 576, 577 (D.P.R. 1997); *United States v. City of Highwood*, 712 F. Supp. 138, 143 (N.D. Ill. 1989); *Deckers v. Kenneth W. Rose, Inc.*, 592 F. Supp. 25, 27 (M.D. Fla. 1984); *Codagnone v. Perrin*, 351 F. Supp. 1126, 1129 (D.R.I. 1972); *Turek v. Lane*, 317 F. Supp. 349, 350 (E.D. Pa. 1970); *Bowman*, 267 F. Supp. at 314. The defendants' showing is neither clear nor unequivocal and is thus inadequate to meet their burden.

The Court finds, based on a preponderance of the evidence, that Tracey did not establish domicile in South Carolina.

## CONCLUSION

For the reasons set forth above, the Court finds that Tracey was, both at the time suit was filed and when the case was removed, a citizen of Florida. Because two defendants are also Florida citizens, complete diversity is absent and the Court lacks subject matter jurisdiction. Accordingly, the plaintiffs' motion to remand is **granted**.[9] This action is **remanded** to the Circuit Court of Mobile County.

---

[9]The plaintiffs' two motions to strike, (Docs. 53, 56), are **denied as moot**.

DONE and ORDERED this 11th day of July, 2008.

                                                  s/ WILLIAM H. STEELE
                                                  UNITED STATES DISTRICT JUDGE